UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATRINA A. BROWN

    Plaintiff,

v.

                                           Case No. 05-73210

COMMISSIONER OF SOCIAL
SECURITY,                             Honorable Patrick J. Duggan

    Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on June 20, 2006.

PRESENT:        THE HONORABLE PATRICK J. DUGGAN
                           U.S. DISTRICT COURT JUDGE

**I. Introduction**

Plaintiff Katrina A. Brown brought this action pursuant to 42 U.S.C. § 405(g) to review a final decision of an Administrative Law Judge ("ALJ"), as affirmed by the Appeals Council, which denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The ALJ has found that Brown is not disabled within the meaning of the Act. For the reasons stated below, the Court finds this decision to be supported by substantial evidence. Accordingly, the Magistrate Judge's Report and

Recommendation denying Brown's Motion for Summary Judgment and granting Defendant Commissioner's Motion is adopted.

## II. Background

Brown was born September 13, 1978. At the time of filing her application for DIB, she was twenty-six years old. She has a high school education, and her past work experience includes employment as a bank teller, retail sales clerk, and stock clerk.

Brown filed an application for DIB on December 19, 2003, alleging that she had become disabled and unable to work after she was involved in automobile accident on November 25, 2002, which caused her back injuries and resulted in debilitating lower back pain. (Tr. 45-47). After the Social Security Administration denied her application on February 17, 2004, Brown filed a timely request for a hearing, which was held on October 5, 2004 in front of ALJ John H. Schumaker. (Tr. 250). At the hearing, Plaintiff appeared without counsel and testified. (Tr. 262-272, 275). Vocational Expert ("VE"), James Fuller also testified. (Tr. 272-274). On November 23, 2004, ALJ Schumaker issued a decision denying Brown's claim, finding that although Brown could not return to her previous employment, Brown retained the residual capacity to perform a limited range of sedentary work,[1] including inspection jobs, security or surveillance system monitoring positions, mail or bill sorter work, assembly work, and packaging jobs (Tr. 19-27).

---

[1] "Sedentary work" under the Social Security regulations is defined as work that involves lifting no more than ten pounds at a time, a certain amount of walking and standing but primarily sitting. 20 C.F.R. § 404.1567(a).

After the Appeals Council denied review (Tr. 4-6), Brown came to this Court, under 42 U.S.C. § 405(g), seeking judicial review of the denial of benefits. Brown and the Commissioner filed cross-Motions for Summary Judgment and the Court referred these Motions to Magistrate Judge R. Steven Whalen for entry of a Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1)(B) and E.D. Mich. LR 72.1(b)(3). Magistrate Judge Whalen then filed the R&R on April 18, 2006, recommending that Brown's Motion for Summary Judgment be denied (R&R at 1).

On April 25, 2006, Brown filed timely objections to the R&R. This Court now reviews *de novo* the portions of the R&R that Brown finds objectionable. *See* 28 U.S.C. § 636(b)(1)(C); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

### III. Standard of Review

This Court reviews ALJ findings to determine if they are supported by substantial evidence. *See* 42 U.S.C.§ 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Electric Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217). The substantial evidence standard presupposes that there is a "zone of choice" within which the decision maker can properly rule either way, without judicial interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). Thus, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the

record that would have supported an opposite conclusion, so long as substantial evidence supports conclusions reached by the ALJ." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).

## IV. Discussion

Brown's overall objection to the R&R is that Magistrate Judge Whalen erred in finding that substantial evidence supports the ALJ's decision. (Objs. at 2). Brown specifically asserts that ALJ Schumacher erred in his credibility assessment of Brown by failing to render a judgment consistent with Social Security Ruling ("SSR") 96-7p and that Magistrate Judge Whalen never specifically addressed this assignment of error in his R&R, even though Brown raised it in her Motion. (Objs. at 2).

Generally, ALJ credibility determinations are entitled to a high degree of deference. *Beavers v. Sec'y of Health, Educ. and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978). Nonetheless, the Court has the responsibility of ensuring that the ALJ still follows the Regulations in making disability determinations. Social Security Rulings, like SSR 96-7p, clarify the mandates of the Regulations, and though they do not carry the force and effect of law, they are usually given deference because they constitute the Social Security Administration's interpretations of its own regulations and the statutes which it administers. *See Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 557 (6th Cir. 1995).

When making a determination regarding a claimant's subjective complaints of pain, the ALJ must follow the specific requirements set forth in SSR 96-7p, which, in part

clarifies the standard for evaluating subjective complaints of pain under 20 C.F.R. § 404.1529.  61 F.R. 34483 (1996).  According to SSR 96-7p, the ALJ, in evaluating a claimant's symptoms of pain, must first decide "whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the individual's pain or other symptoms."  *Id*. at 34484.  Once this has been shown, the ALJ "must evaluate the intensity, persistence, and limiting effects of the individual symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id*. at 34485.  This second prong of the evaluation requires the ALJ to make a finding about the credibility of the claimant.  *Id*.

The Sixth Circuit has adopted a two-part framework for evaluating subjective complaints of pain, which has subsequently been held not to be markedly different from the two prong test set forth in the Regulations.  *McAvoy v. Chater,* 81 F.3d 44, 47 (6th Cir. 1995).   The Sixth Circuit first articulated this approach in *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986):

> [F]irst, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the disabling pain.

Brown first asserts that she has satisfied prong one of the evaluative framework set forth in *Duncan* and SSR 96-7p.  The ALJ found that Brown "has radiculopathy with associated back pain[,] an impairment considered 'severe'" but that "these medically determinable impairments do not meet or medically equal one of the impairments listed in

5

Appendix 1" of the Social Security Administration's Regulations. (Tr. 23). Certainly, such a finding of a "severe" medically determinable impairment could reasonably be expected to produce Brown's pain. In fact, the first step of the evaluation "does not involve a determination as to the intensity, persistence, or functionally limiting effects" of the claimant's symptoms, 20 C.F.R. § 404.1429(b), so the ALJ's finding of "radiculopathy with associated back pain" is sufficient to satisfy this first rung.

Brown next argues that the ALJ failed to properly evaluate her symptoms under the second prong of the Regulation's two part evaluative framework. (Objs. at 7). She specifically cites a list of factors under SSR 96-7p that the ALJ must consider in addition to the objective medical evidence when assessing the credibility of her statements:

> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Despite Brown's contention that the ALJ failed to address these factors, the record suggests otherwise. First, the ALJ specifically referenced some of Brown's daily activities including washing dishes, going to therapy, and cooking dinner. (Tr. 21). Second, the ALJ discussed Brown's allegations that "before surgery her pain level was 8,

on a scale of 1-10 with 10 being the most excruciating, and now it has reached a plateau of 5 which is aggravated by bending, stooping, kneeling, sitting/standing too long in one place." *Id*. Although the ALJ discussed the side effects and general effectiveness of Brown's pain medication at some length (Tr. 21-23), he only explicitly stated one of the types of pain medication taken by Brown – Celebrex – and never listed any of the dosages. Given the amount of detail that was included in the ALJ's decision regarding Brown's condition and treatment, however, it is clear that the ALJ at least considered both the types and dosages of Brown's pain medication in rendering his decision. Finally, the ALJ addressed Brown's trips to the pain clinic for steroid injections, her use of a back-brace, and her combination of therapeutic pool and land exercises involving lumbar stabilization and flexibility. (Tr. 21).

Brown also asserts that the ALJ cannot base his assessment of Brown's subjective complaints of pain solely on the ALJ's personal observations of Brown during the hearing. (Objs. at 10). The ALJ specifically stated:

> The undersigned carefully observed the claimant and notes that she was able to cock her neck 45 degrees and was not in any obvious pain or discomfort when walking in or out of the hearing room or while sitting during the course of the hearing. In addition, the claimant lacked the general physical appearance of a person who might have been experiencing prolonged or severe pain. These observations directly conflict with the claimant's testimony and undermines [sic] her credibility.

(Tr. 23-24). While it may be true that the ALJ's observation that Brown was able to cock her neck 45 degrees is irrelevant in this case,[2] the ALJ's personal observations of Brown

---

[2] As Brown points out, her alleged disability is lower back pain and not pain in her upper spine. Commissioner argues that this raises another inconsistency because Brown saw

7

during the hearing do have relevance. *See Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990). In fact, since credibility determinations are "crucial to resolution of the claim, the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428 (1983) (quoting *Beavers*, 577 F.2d at 387). Thus, as SSR 96-7 instructs, the ALJ was correct in including his personal observations in the overall evaluation of the credibility of Brown's statements. 61 F.R. 34483, 34488.

Brown further argues that the ALJ's credibility findings were not grounded in the evidence or articulated in the decision. To support her contention, Brown cites another passage of SSR 96-7p, which provides:

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about the individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision . . . .The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

61 F.R. 34483, 34485-34486.

The ALJ did not base his decision entirely on "an intangible or intuitive notion about [Brown's] credibility," as Brown argues. To the contrary, the ALJ addressed and

---

Dr. Kachaduriun on December 11, 2002 for an evaluation of "neck pain with radiation into her arms and legs and back pain." (Tr. 95). However, as Brown suggests, this evaluation occurred less than a month after her accident and Brown's alleged impairment is constant *lower* back pain.

8

assessed Brown's credibility throughout his opinion.  For instance, the ALJ referenced conflicting evidence between the examining physician's reports and claimant's testimony:

> The record also shows a conflict between the examining physicians as to the claimant's impairment.  Dr. Kachadurian examined the claimant several times and noted that she had 5/5 strength in the upper and lower extremities and a normal gait and station.  Dr. Soo noted that the claimant appeared to be in no distress and was sitting comfortably.  These observations contradict the claimant's allegations that walking or sitting aggravates her condition and causes increased pain.

The ALJ also pointed out that disabling back pain is "typically accompanied by physical effects that are objectively observable" and cited Dr. Soo's note that Brown appeared to have no signs of muscle atrophy, one physical effect that is normally associated with severe back pain.  (Tr. 23).  Next, Brown claimed that she suffered stomach and abdominal pain, but the ALJ correctly noted that Brown's tests on September 2, 2004 and October 28, 2003 came up negative. (Tr. 23).  Although her alleged stomach and abdominal pains are distinct from her alleged back pain, the discrepancies in the record lend weight to ALJ's finding that Brown's testimony was not credible.

Since judicial review of the ALJ's findings must be based upon the record taken as a whole, *Beavers*, 577 F.2d at 387, the Court may look to any evidence in the record regardless of whether it has been cited by the ALJ.  *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241 (6th Cir. 1989).  Here, as the Magistrate Judge noted, the record contains other conflicts between the examining physician's reports and the plaintiff's testimony that were not specifically referenced in the ALJ's opinion.  (Tr. 23).  For

9

example, Dr. Brooks stated that Brown's alleged limitations were not borne out by medical testing or examination. (Tr. 125). Also, notwithstanding evidence of disc desiccation, Brown's MRIs, x-rays, and CT scans showed normal results – no disc herniation, spinal stenosis, or neural foraminal narrowing . (Tr. 84-87, 96, 109). Accordingly, the ALJ's decision did not solely rely on his personal observations of Brown during her hearing; rather the ALJ correctly addressed and assessed Brown's credibility throughout his decision.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment is **DENIED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Daniel L. Pulter, Esq.
James A. Brunson, Esq.